

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/13/2013

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 12-33870 |
| THOMAS TIMOTHY O' DONOHOE; aka | § | CHAPTER 7 |
| O' DONOHOE, JR; aka O' DONOHOE, III | § | |
| | § | |
| Debtor(s). | § | DAVID R. JONES |
| | § | |
| THOMAS TIMOTHY O' DONOHOE | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | ADVERSARY NO. 12-03281 |
| | § | |
| PANHANDLE-PLAINS HIGHER | § | |
| EDUCATION AUTHORITY, *et al* | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

In this adversary proceeding, Thomas Timothy O'Donohoe (the "Debtor") seeks a determination that his student loans are dischargeable under 11 U.S.C. § 523(a)(8). For the reasons set forth below, the Court holds that the Debtor's student loan obligations should be discharged. A separate judgment consistent with this opinion will issue.

### Factual Background

The Debtor attended Texas A&M University from 1990 to 1995 ultimately obtaining a bachelor's degree in sociology. In order to fund his education expenses, the Debtor obtained a series of five student loans from various providers. On August 15, 1996, these loans were consolidated into a single loan (the "Loan") held by Panhandle-Plains Higher Education Authority ("PPHEA"). The original principal amount of the Loan was $32,936.32. The Loan has a term of 20 years and accrues interest at the rate of 8.00% per annum. The Loan was guaranteed by the Texas Guaranteed Student Loan Corporation ("TGSLC").

The Debtor's educational success continued. After graduating from Texas A&M, the Debtor obtained a masters degree in business administration from Pepperdine University. The Debtor did not incur any additional student loans in connection with his post-graduate education.

After graduating from Pepperdine, the Debtor found employment in the commercial real estate development and management fields.  Although the Debtor had periods of temporary unemployment, the Debtor earned in excess of $150,000 per year for each of 2007, 2008 and 2009.

The Debtor's professional success, however, was limited by the onset of a series of health-related issues.  The Debtor suffers from a number of medical conditions, including cancer, morbid obesity, severe depression, bipolar disorder, adult ADHD, obsessive compulsive disorder, high blood pressure, and sleep apnea.[1]  The Debtor previously received treatment at multiple facilities in California, Illinois, and Texas for a variety of mental illnesses [Plaintiff's Exhibits 50-53].  The Debtor was also committed for suicidal thoughts and presenting a danger to himself [Plaintiff's Exhibit 53].  Without ongoing treatment and appropriate medication, the Debtor is unable to function in ordinary social and work settings.  When properly medicated, the Debtor is stable but unable to process at a sufficiently high level to engage in commercial activity.

The Debtor's mental condition affected his ability to hold a job.  In January 2008, the Debtor voluntarily resigned from a large real estate company due to personality conflicts and his inability to attend work on a regular basis. The Debtor's last employment ended in December 2009.  The Debtor testified that no reason was given for his termination but he suspects that his frequent absences and his inability to timely complete projects contributed to his termination.  The Debtor has since been unable to find a job despite his continued efforts.  The Debtor provided evidence that he has applied for hundreds of jobs in Houston and around the country.

Throughout this period, however, the Debtor recognized his obligation to repay the Loan.  Since the Loan's inception, the Debtor made 141 monthly payments totaling $42,289.28.  TGSLC asserts that the current balance of the Loan is approximately $24,661.33.

The Debtor testified that he lives frugally.  The schedules and statement of affairs filed in this case reflect this very modest lifestyle.  The Debtor currently supports himself solely through participation in the Texas Food Stamp Program and family contributions.  The Debtor's lifestyle is well below the Department of Health and Human Services' poverty guideline. The Debtor's financial outlook since filing for bankruptcy has not improved.  He continues to suffer from significant mental disorders which go untreated due to the lack of health insurance or available public assistance.

While the Court is not a medical professional, the Court has had the opportunity to watch the Debtor in multiple hearings on a variety of matters.  While well-spoken and intelligent, the Debtor has trouble completing a thought. The Debtor's social skills are minimal at best.  Based on its observation of the Debtor, the Court cannot identify any trade or business in which the Debtor could successfully hold a stable job.

---

[1] The Debtor's exhibits include copies of medical records from health professionals that support his testimony.

**Procedural Background**

The Debtor filed a voluntary chapter 7 case on May 25, 2012. The case was filed *pro se*. Debtor received a general discharge of his debts on November 20, 2012. On June 21, 2012, the Debtor initiated this adversary proceeding against PPHEA and TGSLC seeking a determination that the Loan is discharged pursuant to 28 U.S.C. § 523(a)(8).

On July 20, 2012, PPHEA submitted a claim to TGSLC as guarantor for payment and assigned the Loan to TGSLC. On August 7, 2012, TGSLC filed a motion seeking to be substituted for PPHEA. An Order granting the motion to substitute was entered on August 15, 2012 [Docket No. 20]. TGSLC is the sole remaining defendant in this adversary proceeding.

The Court conducted a trial on April 9, 2013. The Debtor called himself as the sole witness. He was cross examined by TGSLC. The parties stipulated to the admission of their exhibits.[2] No other testimony was adduced by either party. Based on the evidence received, the Court makes the following findings of fact and conclusions of law.

**Analysis**

The Court has jurisdiction over this contested matter pursuant to 11 U.S.C. § 1334. This adversary is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I). The Court has constitutional authority to enter a final order in this adversary proceeding.

The Debtor asks this Court to declare his obligations under the Loan dischargeable under 11 U.S.C. § 523(a)(8). The applicable provision of 11 U.S.C. § 523(a)(8) states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
>> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless-
>>
>> (A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
>>
>> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

The "undue hardship" exception to the general discharge for student loans was implemented in the 1998 amendments to the Bankruptcy Code. This exception "was enacted to

---

[2] Debtor's Exhibits 1-67 were admitted. TGSLC's Exhibits 1-7 were admitted.

prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans." *In re Hornsby,* 144 F.3d 433, 436–37 (6th Cir. 1998). Congress sought to prevent graduates from taking advantage of federally guaranteed student loans and then seeking to discharge them early in their careers without having made a good faith effort over a period of time to repay those obligations. Only those persons experiencing exceptional unforeseen circumstances under which repayment of the loan would cause an undue hardship over an extended period of time should be allowed to discharge student loans in bankruptcy.

The Bankruptcy Code does not define what constitutes "undue hardship." *Kettler v. Great Lakes Higher Educ. Serv. Corp. (In re Kettler),* 256 B.R. 719, 722 (Bankr. S.D. Tex. 2000). Most courts have adopted the three-prong test articulated by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Educ. Serv. Corp.,* 831 F.2d 395 (2nd Cir. 1987). *In re Gerhardt,* 348 F.3d 89, 91 (5th Cir. 2003) (expressly adopting *Brunner*). The *Brunner* test requires a Debtor to show that: (1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for itself and its dependents if forced to repay the loan; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and (3) the debtor has made good faith efforts to repay the loan. *Id.* at 91.

The parties do not dispute, and the Court finds, that the requirement of § 523(a)(8)(A) that the loan first become due more than seven years prior to the petition date is satisfied in this case. The Court therefore turns to whether the repayment of the Loan would impose an "undue hardship" upon the Debtor in light of the *Brunner* factors.

**The First Prong of *Brunner* – The Debtor Cannot Pay the Loan and Maintain a Minimal Standard of Living.**

The first element of the *Brunner* test – that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living if forced to repay the loan - requires a determination of what constitutes a "minimal" standard of living. While a precise definition has not yet been adopted, "[c]ourts universally require more than temporary financial adversity and typically stop short of utter hopelessness." *Nary v. The Complete Source (In re Nary),* 253 B.R. 752, 761 (N.D. Tex. 2000) (quoting *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby),* 144 F.3d 433, 437 (6th Cir. 1998)). However, the Bankruptcy Code does not require that the debtor live in abject poverty before a student loan may be discharged." *Yapuncich v. Montana Guaranteed Student Loan Program (In re Yapuncich),* 266 B.R. 882, 888 (Bankr. D. Mont. 2001).

At trial, TGSLC stipulated to the satisfaction of the first *Brunner* factor. Even without this stipulation, the Court finds that the Debtor has satisfied the first prong of the *Brunner* test. Given the Debtor's current lack of income and his financial needs, he cannot maintain a minimal standard of living even before considering the Loan obligations. The Court concludes that, under his current circumstances, the Debtor is not able to make monthly payments on the Loan and maintain a minimal standard of living.

**The Second Prong of *Brunner* – Additional Circumstances Exist Diminishing the Debtor's Future Ability to Repay the Loan.**

The second prong of the *Brunner* test requires a showing that "additional circumstances" exist indicating that the debtor's inability to maintain a minimal standard of living is likely to persist for a significant period of time. *Gerhardt,* 348 F.3d at 92. This factor involves a showing by the Debtor of the inability to pay in the future for reasons that are both outside the debtor's control and were not reasonably foreseeable when the loan was obtained. The debtor must prove "a total incapacity" to pay debts in the future. *Id.* Courts have pointed to a variety of factors in evaluating the existence of additional circumstances. This Court is required to consider whether "there is a likelihood that the debtor's financial situation will improve sufficiently to permit the debtor to repay the loans, considering the debtor's age, education, work history, health, assets, ability to obtain a higher paying job or reduce expenses and other circumstances." *In re Pratt*, 375 B.R. 753, 761 (Bankr. S.D. Tex. 2007). A Court may also consider ongoing psychiatric problems. *Gerhardt,* 348 F.3d at 92.

When relying on a medical condition, a debtor is not required to prove the existence of a completely debilitating medical condition in order to establish an "undue hardship" under § 523(a)(8). *See McGinnis v. PHEA (In re McGinnis),* 289 B.R. 254, 256 (Bankr. M.D. Ga. 2002). If a debtor can demonstrate that some condition will, in all likelihood, inhibit the long-term ability to repay the student loan debt, the second prong of the *Brunner* test is satisfied. Moreover, a debtor is not required to present expert testimony to corroborate his own testimony about his health. *See Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett),* 487 F.3d 353, 359–60 (6th Cir. 2007); *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley),* 494 F.3d 1320, 1325 (11th Cir. 2007). The Court may rely on the debtor's testimony and any collaborating evidence that is offered. *Id*.

The Debtor must also establish that the continuing incapacity is not within its control. *Pratt*, 375 B.R. at 761. In evaluating this factor, courts have focused on whether the incapacity is self-imposed, such as purposeful under-employment or the refusal to sacrifice a desired standard of living. *Gerhardt,* 348 F.3d at 92; *See In re Grigas*, 252 B.R. 866, 875 (Bankr. D.N.H. 2000). "Additional circumstances" under *Brunner* are circumstances that impact the debtor's future earning potential but which were either not present when the debtor applied for the loans or have since been exacerbated. *Gerhardt,* 348 F.3d at 92. A debtor must show that the circumstances that prevent repayment could not have been reasonably anticipated when the loan was received. For example, in *Gerhardt*, the debtor incurred $77,000 in student loans to obtain credentials as an orchestra cellist. In holding that the student loans were not discharged, the *Gerhardt* court noted that it was imprudent for the debtor to incur such a heavy debt load to pay for training as an orchestra musician knowing what kind of salary he could expect. *Gerhardt*, 348 F.3d at 93.

A review of the relevant case law leads the Court to believe that perhaps a more appropriate expression of the second prong of *Brunner* is that e*xceptional* additional circumstances exist. At first glance, it is difficult to appreciate the road the Debtor in this case has traveled. The Debtor is approximately 45 years old. He is intelligent and articulate. He holds an advanced degree from a fine university. He prosecuted this adversary proceeding *pro se*

in a manner that the Court would expect from an experienced attorney. However, looking beneath the surface, the Debtor has a long history of mental health and medical disorders including bi-polar condition, severe depression, anxiety, adult attention-deficit disorder, suicidal tendencies, high-blood pressure, sleep apnea, morbid obesity and mobility problems. The Debtor's personal demeanor, while polite and professional, projects these issues. One paper clip that is out of place forces the Debtor into mental gridlock. These conditions make it difficult, if not impossible, for the Debtor to find employment. These circumstances have not materially changed for the better over the past several years.

The Court finds the Debtor earnest in his expression of shame for his circumstances and inability to find gainful employment to repay his obligations. This Debtor is not guilty of being unwilling to sacrifice a chosen life style in order to fulfill his obligations. There are no large homes, vacations, fancy cars, a family he cannot support or an emotionally satisfying yet unprofitable job. The Debtor lives in his mother's home. The Debtor supports himself with food stamps and family assistance. The Debtor is not able to afford health insurance, basic health care or needed medications. While the wisdom of certain life choices may be questioned, the Court does not believe the Debtor has purposely or lazily placed himself in this predicament. The Court finds that the Debtor has physical and psychiatric impairments that affect his ability to find and keep a job. The Court further finds that these impairments will persist and prevent gainful employment in the foreseeable future. The Court does not believe that even if the Debtor were able to obtain a job that would allow repayment of the Loan, he would be able to maintain that employment for any length of time. Indeed, when questioned, TGSLC could not identify even one job that the Debtor was equipped to hold. The Debtor's medical history, along with other circumstances such as his age and long-term unemployment, support the conclusion that the Debtor's impairment is likely to persist for a significant period. The Court concludes that, under the circumstances, the Debtor has satisfied the second element of the *Brunner* test.

**The Third Prong of *Brunner* – Good Faith Effort to Repay.**

The third inquiry under the *Brunner* test is whether the debtor has made a good faith effort to repay the student loan. This aspect recognizes that undue hardship "encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control." *Stein v. Bank of New England (In re Stein),* 218 B.R. 281, 288 (Bankr. D. Conn. 1998). While overlap exists with the second factor, the primary focus of the third prong is on the debtor's repayment efforts. *Gerhardt*, 348 F.3d at 93 n.3. "Factors to be considered include the number of payments the debtor made, attempts to negotiate with the lender, proportion of loans to total debt, and possible abuse of the bankruptcy system." *In re Wallace,* 259 B.R. 170, 185 (C.D. Cal. 2000).

The Court finds that the Debtor believed that he would be able to repay the Loans when the funds were borrowed and did intend to repay the loans. This finding is not made on mere supposition. The Debtor made 141 payments toward the Loan totaling $42,289.28. TGSLC asserts that the Debtor's failure to participate in an income contingent repayment plan is a *per se* demonstration of a lack of good faith in attempting to repay the Loan. The Court disagrees. The Debtor's failure to participate in the Direct Loan Program or the IRCP does not prevent him from satisfying the good faith prong of the *Brunner* test. *See Barrett v. Educ. Credit Mgmt. Corp. (In*

*re Barrett),* 487 F.3d 353, 359–60 (6th Cir. 2007); *See In re Tirch,* 409 F.3d 677, 682 (6th Cir. 2005); *Jones v. Bank One Texas*, 376 B.R. 130 (W.D. Tex. 2007). Participation in such a plan is a consideration in determining whether a debtor has made a good faith effort but it is not a prerequisite to proving good faith. *See Smith v. Wells Fargo Educational Financial Services*, 442 B.R. 550, 555 (Bankr. S.D. Tex. 2010); (finding that a debtor's decision not to enroll in a income-contingent repayment plans to "not [be] a *per se* indication of a lack of good faith.") Had Congress intended participation in the [income-contingent repayment plan] – implemented in 1994 – to effectively repeal discharge under §523(a)(8), it could have done so. *Tirch*, 409 F.3d at 682. While the utility of the approach may be questionable, the Debtor has been proactive in contacting the Loan servicing agents to obtain forbearances during his periods of unemployment and in exploring an affordable repayment program or modification of his loan. The Court finds that the Debtor made a good faith effort to repay the student loan debt despite his non-participation in an income contingent repayment plan. The Court further finds that in this case, an income-contingent plan would serve no useful purpose. The Debtor has demonstrated that he has taken his loan obligations seriously and has made significant payments toward the Loan.

## Conclusion

The Debtor has satisfied each of the three prongs of the *Brunner* test. The Court concludes that repayment of the Loan would impose an undue hardship on him. Therefore, the Debtor's student loan obligations to the Texas Guaranteed Student Loan Corporation are discharged pursuant to 11 U.S.C. § 523(a)(8). A separate judgment consistent with the foregoing will issue.

**SIGNED: June 13, 2013.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**